VIRGINIA R. EDWARDS

*v.*

VIOLA MAY LYNCH

(No. 12894)

Submitted May 26, 1970.          Decided July 14, 1970.

*Oakley J. Hopkins,* for appellant.

*Baker & Armistead, Charles S. Armistead,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Monongalia County entered on March 11, 1969, on a jury verdict for $75,000, involves a civil action instituted in that court by Virginia R. Edwards, as plaintiff, against Viola May Lynch, as defendant, for recovery of damages for personal injuries sustained by the plaintiff while she was being transported as a passenger in an automobile which was being driven and operated by the defendant when that automobile collided with another automobile in the State of Maryland on May 21, 1967.

At the conclusion of all the evidence, the trial court directed a verdict in favor of the plaintiff on the question of liability and authorized the jury to determine the amount of the plaintiff's damages. The jury thereafter returned the verdict which formed the basis of the judgment from which the defendant was granted the appeal to this Court.

After the appeal was awarded, the plaintiff was granted leave to move to affirm the judgment of the trial court pursuant to the provisions of Code, 1931, 58-5-25, and Rule IX of the Rules of this Court. In these circumstances, the case was submitted for decision upon the original record, upon printed briefs and upon oral argument of counsel.

The primary question presented for decision on this appeal is whether the trial court erred in directing a verdict in favor of the plaintiff on the issue of liability. The facts pertinent to a decision of that question are without substantial dispute.

As a consequence of the severe personal injuries sustained by the plaintiff, she incurred medical bills and a projected loss of earnings which were quite substantial in their aggregate amount. In these circumstances, it was stipulated in the trial court that, on this appeal, the defendant would not present or argue any cause for reversal based on the extent of

the plaintiff's injuries or the amount of the verdict and judgment.

Immediately prior to the occurrence of the collision of the two automobiles, Viola May Lynch, the defendant, was proceeding in a northerly direction near LaVale, Maryland, on a public highway known as Route 53. A lady named Isabel Hough was seated on the passenger side of the front seat and the plaintiff, a sister of the defendant, was a passenger on the rear seat of the defendant's automobile. Immediately prior to the occurrence of the accident, the other automobile which was involved in the collision was being operated by Mrs. Elsie Morton on a public highway known as Route 49.

The collision occurred within the area of the intersection of the two highways. On Route 53, on which Viola May Lynch, the defendant, was traveling, there is a highway "stop sign" on each side of that highway near the point of the intersection of the two highways. It was necessary for the defendant to pass these two highway stop signs before entering the point of intersection of the two highways. It is undenied that Route 49, on which Mrs. Morton was traveling, is a through highway, known in Maryland law as a "boulevard", and that it was the favored highway in relation to Route 53, on which the defendant was traveling.

It is undisputed that the substantive law of the State of Maryland is applicable to and controls the plaintiff's right to recover in the civil action. *Thornsbury v. Thornsbury,* 147 W.Va. 771, pt. 1 syl., 131 S.E.2d 713. It was stipulated by counsel that the law applicable to the rights of the respective drivers of the motor vehicles at the highway intersection involved in this case is stated in Sections 233 and 242 of Article 66½ of the Public General Laws of Maryland and that the trial court was authorized to take judicial notice of those statutes. We are, of course, authorized to take judicial notice of the Maryland statutes in question, irrespective of the presence or absence of a stipulation authorizing us to do so. Code, 1931, 57-1-4. A portion of Section 233 of the Maryland statute in question is as follows:

"(a) *In general.*—The driver of a vehicle shall come to a full stop as required by this article at the entrance to a through highway and shall yield the right-of-way to other vehicles approaching on said through highway.

"(b) *Stopping in obedience to stop sign.*—The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right-of-way to a vehicle approaching on the intersecting highway as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway."

Section 242 of the Maryland statute previously referred to is as follows:

"(a) *Designation of through highways and erection of signs.*—The State Roads Commission with reference to State and county highways, and local authorities with reference to other highways under their jurisdiction may designate through highways and erect stop signs at specified entrances thereto or may designate any intersection as a stop intersection and erect like signs at one or more entrances to such intersection.

"(b) *Type and location of signs.*—Every said sign shall bear the word 'stop' in letters not less than six inches in height. When installed upon important intersecting highways, these signs shall be self-illuminated at night or, if not, shall be of the reflector type. Every stop sign shall be located as near as practical at the property line of the highway at the entrance to which the full stop must be made, or at the nearest line of the crosswalk thereat, or, if none, at the nearest line of the roadway.

"(c) *Duty of driver.*—Every driver of a vehicle shall come to a full stop at such sign or at a clearly marked stop line before entering an intersection and yield the right-of-way to vehicles approaching on the intersecting highway except when directed to proceed by a peace officer or traffic control signal."

The evidence clearly discloses that the collision occurred within the area of the intersection of the two highways. This fact was not disputed by the defendant or by any other witness

who testified at the trial. Paul J. Fiorita, a member of the Maryland State Police, testified that he investigated the circumstances of the accident a short while after the collision occurred. He made a diagram which illustrated the intersection of the two highways and the position of the two automobiles as they came to rest following the collision. He also made eight photographs which clearly depict the two highways at and near the point of intersection and the position of the two automobiles as they came to rest following the collision. The photographs and the diagram were made a part of the evidence.

The photographs, supplemented by the diagram and by the testimony of the investigating officer, demonstrate clearly that, when the two automobiles came to rest following the collision, they were in contact with each other, within the area of the intersection and in the right lane of the through highway upon which Mrs. Morton had a lawful right to proceed in her automobile. The photographs disclose the location of the two stop signs on Route 53 which the defendant necessarily passed in order to enter the intersection. The investigating officer testified that there was nothing whatsoever to obstruct the defendant's view of the approaching Morton automobile. This fact was admitted by the defendant when she testified as a witness.

The defendant testified that she was an experienced driver; that previously she had "driven past" the intersection in question "quite a few times"; that before entering the intersection, she stopped her automobile and looked "both ways" for approaching traffic; and that thereafter she "started up." In explaining the circumstances under which she proceeded into the intersection, the defendant testified as follows:

> "Well, I had to ease out a little ways, in order to see up Braddock Road [which would be the opposite direction from which the Morton automobile was approaching] because you can't see that way, there is shrubbery and things back there, and trees; so I eased out a little bit, and of course I looked to the left, [the direction from which the Morton vehicle was approaching] and then I eased out and looked

to the right, and when I raised up, she hit me, because I was. stopped."

When asked whether, upon reflection, she knew of anything she could have done to avoid the collision, the defendant answered: "Nothing. Even if I would have seen her, I couldn't have backed up; that is as dangerous as sitting there." The attention of the witness was directed to apparent "debris" on the highway which was disclosed by one of the photographs and which was near the front and right side of her automobile. She stated in her testimony that this was the point where her car was standing when Mrs. Morton "hit me." According to the defendant's testimony, her automobile was within the intersection "standing still" when the collision occurred.

The photographs and the entire testimony indicate that the two automobiles came to rest in contact with each other at the exact point of collision. There is nothing in the record to indicate the manner in which, or the speed at which, the Morton automobile was being operated immediately before the collision. Counsel for the defendant apparently concedes that his client failed to obey the Maryland statutes which required her to yield the right-of-way to other vehicles approaching the intersection while traveling on the through highway on which Mrs. Morton was traveling, but he relies on a contention that Mrs. Morton was negligent; that she had the last clear chance to avoid the collision; and that, therefore, the plaintiff's right of action, if any, was against Mrs. Morton and not against the defendant. We regard this contention as one which is wholly untenable.

The last clear chance doctrine is applicable to a plaintiff whose negligence would bar a recovery by the plaintiff but for the last clear chance of the defendant, by the exercise of a reasonable care, to have avoided the injury of which the plaintiff complains. A defendant may not rely upon the doctrine by asserting the negligence of a joint tort-feasor who has not been sued by the plaintiff. *Greene v. Charlotte Chemical Laboratories, Inc.*, 254 N.C. 680, 689, 120 S.E.2d 82, 88; 13 M.J., *Negligence*, Section 34, page 550; 65A C.J.S., *Negligence*,

Section 136(1), page 115. "Where the concurrent negligence of two or more persons combined together results in an injury to a third person, recovery may be had as to either or all of such wrongdoers: each of such joint tort feasors is liable for the entire damages without regard to the comparative degree of negligence, though only one recovery may be had." *Metro v. Smith,* 146 W.Va. 983, pt. 2 syl., 124 S.E.2d 460.

The Maryland statutes previously quoted in this opinion form the basis of a rule which is referred to by the Maryland courts as the Boulevard Rule. This rule is the subject of an article appearing in 26 MARYLAND LAW REVIEW 111, in which pertinent court decisions are thoroughly considered and discussed. At page 117, there appears the following statement of the rule as it relates to the unfavored driver: "The decisions leave no question that if the Boulevard Rule is applicable, the unfavored driver is negligent, regardless of his excuse. Indeed, except in cases where there is a question of fact whether the accident took place during entry onto the boulevard, the unfavored driver in a boulevard situation is negligent as a matter of law."

*Thompson v. Terry,* 245 Md. 480, 226 A.2d 540, involved an action by a plaintiff who was a passenger in a taxicab which was being operated on a through street or "boulevard" by a man named Terry, when an automobile operated by Carter Conway entered the boulevard from an intersecting street. In upholding a verdict in favor of the plaintiff, the Court made the following statement in the body of the opinion (245 Md. at 486, 226 A.2d 543-44):

> "In the instant case the appellant Conway, by his own admission, had stopped on Lafayette Avenue at its intersection with Druid Hill Avenue while he had the red light facing him and, thinking that it might momentarily turn to green, intruded into Druid Hill Avenue against the red signal. The facts present a clear case for the application of the Boulevard Rule with the appellee Terry being the favored driver and the appellant Conway the unfavored driver. In Eastern Contractors v. State, 225 Md. 112, 123, 169 A.2d 430, 435 (1962), this Court held that the Boulevard Rule, vesting the favored driver with the right

of way, applied to intersections controlled by automatic signals with equal force as to those intersections on through highways controlled by stop signs. See generally Note 23 Md.L.Rev. 172 (1963). On the basis of the many cases decided by this Court in which the Boulevard Rule has been applied, there is no question but that Conway, the unfavored driver, was guilty of negligence as a matter of law. Conversely, the law as postulated in these cases eliminates Terry, the favored driver, as the proximate cause of the accident. Brown v. Ellis, 236 Md. 487, 204 A.2d 526 (1964); Dunnill v. Bloomberg, 228 Md. 230, 179 A.2d 371 (1962); McDonald v. Wolfe, 226 Md. 198, 172 A.2d 481 (1961); White v. Yellow Cab Company, 216 Md. 286, 140 A.2d 285 (1958); Sun Cab Company, Inc. v. Cusick, 209 Md. 354, 121 A.2d 188 (1956)."

In a case involving the Maryland Boulevard Law, a court, in proper circumstances, may direct a verdict in favor of the plaintiff. *Brown v. Ellis,* 236 Md. 487, 204 A.2d 526. Considering the Maryland law, as well as the law of this state, we are of the opinion that the negligence of the defendant was a question of law for the court and that the trial court did not commit error in directing a verdict in favor of the plaintiff on the issue of liability. *Sommerville v. The Pennsylvania Railroad Co.,* 151 W.Va. 709, 155 S.E.2d 865; *Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330.

The defendant complains of the refusal of the court to give various instructions offered by the defendant. The court granted Defendant's Instruction No. 1A which told the jury that a verdict may not be based on surmise or conjecture and cautioned the jury "to be on guard against feelings of sympathy, compassion, and charity, and against rendering any verdict growing out of said feelings." The court also gave Defendant's Instruction No. 3 which dealt with proof by a preponderance of the evidence. We have carefully considered the instructions offered in behalf of the defendant and refused by the court and are of the opinion that the court did not err in this respect.

The defense instructions refused dealt primarily with proof of negligence on part of the defendant. Refusal of instructions

in this category was not error in view of our holding that the negligence of the defendant presented a question of law which was properly decided by the trial court.

Defendant's Instruction No. 6 would have told the jury that "there can be no recovery for an unavoidable accident." In unusual circumstances, this Court approved the action of a trial court in giving an instruction dealing with the subject of "unavoidable accident." *Bolling v. Clay*, 150 W.Va. 249, pt. 2 syl., 144 S.E.2d 682. This action of the Court became the subject of a comment which appears in 68 W. VA. L. REV. 349. In *Hollen v. Linger*, 151 W.Va. 255, 151 S.E.2d 330, it was held that the trial court improperly gave such an instruction. In *Schaub v. Linehan*, 92 Idaho 332, 442 P.2d 742, cases dealing with instructions on the subject of unavoidable accident were listed and discussed at length. From that case, it is apparent that instructions of this character are quite generally regarded with disfavor and, as a general rule, should be refused, particularly in actions based on negligence. We are of the opinion that the trial court properly refused in the instant case to instruct the jury on the question of unavoidable accident.

We have carefully considered other assignments of error made in behalf of the defendant and consider them to be without merit.

For reasons stated in this opinion, the plaintiff's motion to affirm is sustained and accordingly the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*