352 S.E.2d 550

**Vincent W.B. PAUL, etc.**

v.

**NATIONAL LIFE, etc.**

**and**

**Arthur A. Vickers, etc.**

**No. 16808.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1986.

Decided Dec. 19, 1986.

Dissenting Jan. 12, 1987.

Joshua I. Barrett, Melissa Hambrick, Ditrapano & Jackson, Charleston, for appellant.

John Slack, III, Lynn Oliver, Jackson, Kelly, Holt & O'Farrell, Andrew J. Goodwin, Charleston, for appellee.

NEELY, Justice:

In September of 1977 Eliza Vickers and Aloha Jane Paul, both West Virginia residents, took a weekend trip to Indiana. The two women were involved in a one-car collision on Interstate 65 in Indiana when Mrs. Vickers lost control of the car. That collision took both women's lives. The administrator of Mrs. Paul's estate brought a wrongful death action against Ms. Vickers' estate and the National Life Accident Company in the Circuit Court of Kanawha County. Upon completion of discovery, the defendants below moved for summary judgment. Defendants' motion contended that: (1) the Indiana guest statute, which grants to a gratuitous host immunity from liability for the injury or death of a passenger unless that host was guilty of willful and wanton misconduct at the time of the accident,[1] was applicable; and (2) that the

---

1. *Indiana Stat.Ann.*, 9–3–3–1 (Burns ed. 1980) provides:

The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.

In 1984, the Indiana legislature amended its guest statute. *Indiana Stat.Ann.* 9–3–3–1 [1984] now provides in pertinent part:

(b) The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:
(1) His parent;
(2) His spouse;
(3) His child or stepchild;
(4) His sister;
(5) A hitchhiker;
resulting from the operation of the motor vehicle while the parent, spouse, child or stepchild, brother, sister, or hitchhiker was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or wilful misconduct of the operator, owner or person responsible for the operation of the motor vehicle.

P.L. 68–1984, § 3, provides "This act does not affect actions accruing before September 1,

record was devoid of any evidence of willful or wanton misconduct on the part of Ms. Vickers. By order dated 29 October 1984, the Circuit Court of Kanawha County entered summary judgment for the defendants below. The order of the circuit court held that our conflicts doctrine of *lex loci delicti* required that the law of the place of the injury, namely, Indiana, apply to the case, and that the record contained no evidence of willful or wanton misconduct on the part of Ms. Vickers. It is from this order that the plaintiffs below appeal.

The sole question presented in this case is whether the law of Indiana or of West Virginia shall apply. The appellees urge us to adhere to our traditional conflicts doctrine of *lex loci delicti*, while the appellants urge us to reject our traditional doctrine and to adopt one of the "modern" approaches to conflicts questions. Although we stand by *lex loci delicti* as our general conflicts rule, we nevertheless reverse the judgment of the court below.

## I

Unlike other areas of the law, such as contracts, torts and property, "conflicts of law" as a body of common law is of relatively recent origin. Professor Dicey has written that he knew of no decisions in England considering conflicts of law points before the accession of James I,[2] and it is generally acknowledged that the first authoritative work on conflicts did not appear until the publication of Joseph Story's *Conflict of Laws* in 1834.[3] Accordingly, no conflicts of law doctrine has ever had any

credible pretense to being "natural law" emergent from the murky mists of medieval mysticism. Indeed, the mention of conflicts of law and the *jus naturale* in the same breath would evoke a power guffaw in even the sternest scholastic. In our post-Realist legal world, it is the received wisdom that judges, like their counterparts in the legislative branch, are political agents embodying social policy in law. Nowhere is this received wisdom more accurate than in the domain of conflict of laws.

Conflicts of law has become a veritable playpen for judicial policymakers. The last twenty years have seen a remarkable shift from the doctrine of *lex loci delicti* to more "modern" doctrines, such as the more flexible, manipulable *Restatement* "center of gravity" test. Of the twenty-five landmark cases cited by appellants in which a state supreme court rejected *lex loci delicti* and adopted one of the modern approaches, the great majority of them involved the application to an automobile accident case of a foreign state's guest statute, doctrine of interspousal or intrafamily immunity, or doctrine of contributory negligence.[4] All but one of these landmark cases was decided in the decade between 1963 and 1973, when many jurisdictions still retained guest statutes, the doctrine of interspousal immunity, and the doctrine of contributory negligence. However, in the years since 1970, these statutes and doctrines have all but disappeared from the American legal landscape.

Although by the mid–1960's only seven states had replaced contributory negli-

1984." This action accrued in 1977. Therefore the Indiana guest statute applicable, if any, is the older version.

2. Dicey, *Conflicts of Laws*, p. 9 (5th ed. 1932).

3. *See,* e.g., R. Leflar, *American Conflicts Law*, p. 1 (3d ed. 1977).

4. *See,* e.g., *Armstrong v. Armstrong*, 441 P.2d 699 (Alaska, 1968) (interspousal immunity auto case); *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968) (interspousal immunity auto case); *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977) (contributory negligence auto case); *Arnett v. Thompson*, 433 S.W.2d 109 (Ky.1968) (interspousal immunity auto case); *Jagers v. Royal Indem. Co.*, 276 So.2d 309 (La.1973) (intrafamily immunity auto

case); *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me. 1970) (guest statute case); *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973) (guest statute case); *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968) (contributory negligence auto case); *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969) (guest statute case); *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966) (guest statute case); *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967) (guest statute case); *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963) (guest statute case); *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917, *cert. dismissed*, 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968) (guest statute case): *Wilcox v. Wilcox*, 26 Wis.2d 617, 133 N.W.2d 408 (1965) (guest statute case).

gence with comparative fault, several states switched over in 1969, and the 1970's and early 1980's witnessed a surge of legislative and judicial action accomplishing the switch. As of 1982, some 40 states had adopted some general form of comparative negligence.

*Prosser and Keeton on Torts*, Ch. 11, § 67, p. 471 (5th ed. 1984) [footnotes omitted]. Indeed, Delaware adopted a comparative negligence statute in 1984, *Del.Code Ann.* Ch. 10, § 8132 (1984), and South Carolina has a statute providing that contributory negligence shall not operate as a bar in motor vehicle accident cases. *S.C.Code Ann.* § 15–1–300 (1974). Thus at most eight states now embrace the doctrine of contributory negligence in automobile accident cases.[5]

A similar evolution has taken place with respect to the doctrine of interspousal immunity.

By 1970 about a dozen courts had rejected any universal principle of immunity between spouses. In the decade that followed more than a dozen other courts joined them in abrogating the immunity, including courts in community property states where special problems created practical difficulties in discarding the immunity. The movement to abolish the unqualified immunity has continued, and it now appears that spousal actions will be permitted for personal injuries in a majority of the states, at least in some circumstances, though some courts have indicated that they will scrutinize such actions with care or that immunity might be retained in some class of case.

*Prosser and Keeton on Torts*, Ch. 22, § 122, p. 903 (5th ed. 1984) [footnotes omitted]. In a footnote, Dean Prosser notes that "abrogation of the immunity has often come first in automobile injury cases." *Id.* at n. 23. *See also Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 244 S.E.2d 338, 341–42 (1978) and cases there cited.

Between 1927 and 1939, some thirty states enacted automobile guest statutes. 2 F. Harper & F. James, *The Law of Torts* § 16.15 (1956).[6] However, no state has enacted a guest statute since 1939.[7] Thirty-three states have at one time or another had statutory or judicially created guest laws. Thirteen guest statutes have been declared unconstitutional.[8] At least nine other states have repealed their guest statutes,[9] and at least five states have substan-

**5.** Those states are Alabama, Arizona, Kentucky, Maryland, Missouri, North Carolina, Tennessee, and Virginia. *See Prosser and Keeton on Torts, supra,* at p. 471, n. 30.

**6.** The first states, Connecticut and Iowa, enacted guest statutes in 1927. 1927 *Conn.Pub.Acts* 4404, ch. 308, § 1 (repealed 1937); *Iowa Code Ann.* § 321.494 (Supp.1983); Note, "The Present Status of Automobile Guest Statutes," 59 *Cornell L.Rev.* 659, 663 & n. 26 (1974).

**7.** 23 *Drake L.Rev.* 216, 218, 16, citing *ABA Special Comm. on Automobile Reparations*, Report 86 (1969).

**8.** *Cal Veh.Code* § 17158 (West 1971), declared unconstitutional in *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Idaho Code* § 49–1401 (1980), declared unconstitutional in *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *Iowa Code Ann.* § 321.494 (Supp.1983), declared unconstitutional in *Bierkamp v. Rogers*, Iowa, 293 N.W.2d 577 (1980); *Kan.Stat.Ann.* § 8–122b (1975), declared unconstitutional in *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); *Ky.Rev.Stat.Ann.* § 12–7 (Baldwin 1931), declared unconstitutional in *Ludwig*

*v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932); *Mich.Comp.Laws Ann.* § 257.401 (1977), declared unconstitutional in *Manistee Bank & Trust Co. v. McGowan*, 394 Mich. 655, 232 N.W.2d 636 (1975); *Nev.Rev.Stat.* § 41.180 declared unconstitutional in *Laakonen v. Eighth Judicial Dist. Court*, 91 Nev. 506, 538 P.2d 574 (1975); *N.M.Stat.Ann.* § 64–24–1 (1953), declared unconstitutional in *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); *N.D.Cent.Code* § 39–15–1 (Repl.Vol.1980), declared unconstitutional in *Johnson v. Hassett*, N.D., 217 N.W.2d 771 (1974); *Ohio Rev.Code Ann.* § 4515.02 (1973), declared unconstitutional in *Primes v. Tyler*, 43 Ohio App.2d 163, 335 N.E.2d 373 (1974); *S.C.Code Ann.* § 15–1–290 (1977), declared unconstitutional in *Ramey v. Ramey*, 273 S.C. 680, 258 S.E.2d 883 (1979); *Utah Code Ann.,* § 41–9–1, (1953), declared unconstitutional in *Malan v. Lewis*, Utah 693 P.2d 661 (1984); *Wyo. Stat.* § 31–5–1116 (1983), declared unconstitutional in *Nehring v. Russell*, Wyo. 582 P.2d 67 (1978).

**9.** *Ark.Stat.Ann.* § 75–913 (1947) (repealed 1983); *Colo.Rev.Stat.* § 42–9–101 (1973) (repealed 1975); 1927 *Conn.Pub.Acts* ch. 308, § 1 (repealed 1937); *Del.Code Ann.* tit. 21, § 6101

tially limited the scope of their guest statutes.[10] Indeed, in 1984 Indiana revised its guest statute to apply only to hitchhikers or guests related to the host as a parent, spouse, child, stepchild, brother, or sister. *Ind.Code Ann.* § 9–3–3–1 (Burns Repl.Vol. 1980). Three states at one time had judicially created automobile guest laws. The cases establishing those laws have been overruled in all three states by court decision or statute.[11]

In sum, twenty-seven of the original guest laws have been repealed, declared unconstitutional, or overruled, and five have been substantially modified. Only one state retains a statute applying to all guest passengers that permits recovery only when the host is guilty of willful or wanton misconduct.[12]

Thus nearly half of the state supreme courts of this country have wrought a radical transformation of their procedural law of conflicts in order to sidestep perceived substantive evils, only to discover later that those evils had been exorcised from American law by other means. Now these courts are saddled with a cumbersome and unwieldy body of conflicts law that creates confusion, uncertainty and inconsistency, as well as complication of the judicial task. This approach has been like that of the misguided physician who treated a case of dandruff with nitric acid, only to discover later that the malady could have been remedied with medicated shampoo. Neither the doctor nor the patient need have lost his head.

The *Restatement* approach has been criticized for its indeterminate language and lack of concrete guidelines. *See First National Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973). *Restatement (Second) of Conflicts of Law,* Sec. 145–146 (1971) provides:

§ 145. *The General Principle*

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principle stated in § 6.

(2) Contacts being taken into account in applying the principle of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing injury occurred,

    (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties, is centered.

These contacts should be evaluated according to their relative importance with respect to the particular issues.

§ 146. *Personal Injuries.*

In an action for a personal injury, the local law of the state where the injury occurred determines the *rights and liabilities* of the parties, unless, with respect to the particular issue, some other state has a more significant relationship

---

(1974) (repealed 1983); *Fla.Stat.Ann.* § 320.59 (1977) (repealed 1972); *Mont.Code Ann.* § 32–1113 (1947) (repealed 1974); *Or.Rev.Stat.* § 30.-115 (1953) (amended in 1979 so as to repeal automobile guest statute); *S.D.Comp.Laws* § 32–34–1 (1969) (repealed 1978); *Tex.Rev.Cit. Stat.Ann.* art. 6701b (1973) (repealed 1985); *Vt. Stat.Ann.* tit. 23, § 1491 (1978) (repealed 1969); *Wash.Rev.Code* § 46–08.080 (1970) (repealed 1974).

**10.** Illinois' guest statute applies to only hitchhikers, *Ill.Ann.Stat.* ch. 95½, § 10–201 (Smith Hurd 1971); Massachussets' and Virginia's guest statutes allow a guest to recover for the host's ordinary negligence, *Mass.Gen.Laws Ann.* ch. 231, § 85L (West Supp.1983); *Va.Code* § 8.01–63 (1977); Nebraska's guest statute applies only to guests who are related to the host as spouse

or within the second degree of consanguinity or affinity, *Neb.Rev.Stat.* § 39–6, 191 (1981).

**11.** In *Grimes v. Roe,* 242 Ga. 669, 251 S.F.2d 266 (1978), the Georgia Supreme Court upheld Georgia's guest statute. However, Georgia superseded the guest law by statute. *O.C.G.A.* § 51–1–36 (formerly *Ga.Code Ann.* § 105–104.1 (Supp. 1982)); *Rider v. Taylor,* 166 Ga.App. 474, 304 S.E.2d 557 (1983). New Jersey and Wisconsin have overruled their court-created guest laws. *Cohen v. Kaminetsky,* 36 N.J. 276, 176 A.2d 483 (1961); *McConville v. State Farm Mutual Automobile Ins. Co.,* 15 Wis.2d 374, 113 N.W.2d 14 (1962).

**12.** *Ala.Code* § 32–1–2 (1975). We are indebted to our colleagues on the Supreme Court of Utah for much of this history of guest statutes. *See Malan v. Lewis,* 693 P.2d 661 (Utah 1984).

**432**

under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6 of the *Restatement* lists the following factors as important choice of law considerations in all areas of law.

(a) The needs of the interstate and international systems;

(b) The relevant policies of the forum;

(c) The relevant policies of other interested states and relative interest of those states in the determination of the particular issue;

(d) The protection of justified expectations;

(e) The basic policies underlying the particular field of law;

(f) Certainty, predictability, and uniformity of results; and

(g) Ease in the determination and application of the law to be applied.

As Javolenus once said to Julian, *res ipsa loquitur.* The appellant cites with approval the description of the Re-*statement* approach set forth in *Conklin v. Horner,* 38 Wis.2d 468, 473, 157 N.W.2d 579, 581 (1968):

We emphasized that what we adopted was not a rule, but a method of analysis that permitted dissection of the jural bundle constituting a tort and its environment to determine what elements therein were relevant to a reasonable choice of law.

That sounds pretty intellectual, but we still prefer a rule. The lesson of history is that methods of analysis that permit dissection of the jural bundle constituting a tort and its environment produce protracted litigation and voluminous, inscrutable appellate opinions, while rules get cases settled quickly and cheaply.

The manipulability inherent in the *Restatement* approach is nicely illustrated by two cases from New York, the first jurisdiction to make a clean break with *lex loci delicti.* The cases of *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and *Kell v. Henderson,* 47 Misc.2d 992, 263 N.Y.S.2d 647 (1965), *aff'd,* 26 App.Div.2d 595, 270 N.Y.S.2d 552

(1966), are aptly discussed by the Supreme Court of Virginia:

In *Babcock,* an automobile guest sued her host in New York for injuries sustained in Ontario caused by the defendant's ordinary negligence. Under New York law, the guest could recover for injuries caused by the host's lack of ordinary care, but the Ontario guest statute barred such a recovery. The court abandoned its adherence to the place-of-the-wrong rule and permitted recovery. It decided that, on the guest-host issue, New York had the "dominant contacts" because the parties were domiciled in New York, were on a trip which began in New York, and were traveling in a vehicle registered and regularly garaged in New York. The court noted that Ontario had no connection with the cause of action except that the accident happened to take place there.

*Kell* presented the converse of *Babcock.* There, the question was also whether the New York ordinary negligence rule applied or whether the Ontario guest statute controlled. The guest was injured by the host's ordinary negligence while the parties, both residents of Ontario, were on a trip in New York which was to begin and end in Ontario. The New York court purported to follow *Babcock* but held that Ontario law would not apply.

*McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662, 664 (1979). It was perhaps recognition of just such gross disparities in result that prompted the Court of Appeals of New York to remark, in a towering achievement in the art of understatement, "candor requires the admission that our past decisions have lacked a precise consistency." *Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 736, 237 N.E.2d 877, 879 (1968).

II

The appellant urges us in the alternative to adopt the "choice-influencing considerations approach" set forth by Professor Leflar in "Choice-Influencing Considerations and Conflicts of Law", 41 N.Y.U.L.Rev.

267 (1966). Professor Leflar has narrowed the list of considerations in conflicts cases to five:

(1) Predictability of results;

(2) Maintenance of interstate or international order;

(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interests;

(5) Application of the better rule of law.

Professor Leflar's approach has been adopted in the guest statute context in the landmark cases of *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973); and *Conklin v. Horner,* 38 Wis.2d 468, 157 N.W.2d 579 (1968). In practice the cases tend to focus more on the fourth and fifth considerations than the first three, and the upshot is that the courts of New Hampshire, Minnesota and Wisconsin simply will not apply guest statutes. This seems to us a perfectly intelligible and sensible bright-line rule. However, it seems unnecessary to scrap an entire body of law and dress this rule up in a newfangled five-factor costume when the same concerns can be addressed and the same result achieved through judicious employment of the traditional public policy exception to *lex loci delicti. See* A. Ehrenzweig, "A Counter-Revolution in Conflicts Law? From Beale to Cavers", 80 Harvard L.Rev. 377, 399, 400 (1966).

## III

■ *Lex loci delicti* has long been the cornerstone of our conflict of laws doctrine.[13] The consistency, predictability, and ease of application provided by the traditional doctrine are not to be discarded lightly, and we are not persuaded that we should discard them today. The appellant contends that the various exceptions that have been engrafted onto the traditional rule have made it manipulable and have undermined the predictability and uniformity that were considered its primary virtues. There is certainly some truth in this, and we generally eschew the more strained escape devices employed to avoid the sometimes harsh effects of the traditional rule. Nevertheless, we remain convinced that the traditional rule, for all of its faults, remains superior to any of its modern competitors. Moreover, if we are going to manipulate conflicts doctrine in order to achieve substantive results, we might as well manipulate something we understand. Having mastered marble, we decline an apprenticeship in bronze. We therefore reaffirm our adherence to the doctrine of *lex loci delicti* today.

■ However, we have long recognized that comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State. *Dallas v. Whitney,* 118 W.Va. 196, 188 S.E. 766 (1936). West Virginia has never had an automobile guest passenger statute. It is the strong public policy of this State that persons injured by the negligence of another should be able to recover in tort. Accordingly, we have abolished the doctrine of interspousal immunity, *Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978), and we have adopted the doctrine of comparative negligence in preference to the harsh rule of contributory negligence. *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979). We abolished charitable immunity for hospitals in *Adkins v. St. Francis Hospital,* 149 W.Va. 705, 143

---

**13.** *See Hopkins v. Grubb,* 160 W.Va. 71, 230 S.E.2d 470 (1977); *In Re Silver Bridge Disaster Litigation,* 381 F.Supp. 931 (S.D.W.Va.1974); *Chase v. Greyhound Lines, Inc.,* 156 W.Va. 444, 195 S.E.2d 810 (1973); *Lambert v. The Great Atlantic and Pacific Tea Company,* 155 W.Va. 397, 184 S.E.2d 118 (1971); *Edwards v. Lynch,* 154 W.Va. 388, 175 S.E.2d 632 (1970); *Thornsbury v. Thornsbury,* 147 W.Va. 771, 131 S.E.2d 713 (1963); *Forney v. Morrison,* 144 W.Va. 722, 110 S.E.2d 840 (1959); *Tice v. E.I. dupont de Nemours & Company,* 144 W.Va. 24, 106 S.E.2d 107 (1958); *Dodrill v. Young,* 143 W.Va. 429, 102 S.E.2d 724 (1958); *Saena v. Zenith Optical Company,* 135 W.Va. 795, 65 S.E.2d 205 (1951); *Dallas v. Whitney,* 118 W.Va. 106, 188 S.E. 766 (1936); *White v. Hall,* 118 W.Va. 85, 188 S.E. 768 (1936); *Schade v. Smith,* 117 W.Va. 703, 188 S.E. 114, (1936); *Wood v. Shrewsbury,* 117 W.Va. 569, 186 S.E. 294 (1936); *Clise v. Prunty,* 108 W.Va. 635, 152 S.E. 201 (1930); *Owen v. Power Company,* 78 W.Va. 596, 89 S.E. 262 (1916).

S.E.2d 154 (1965). We held that there is no common law governmental immunity for municipal corporations in *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974). And we abrogated the doctrine of parental immunity to permit an unemancipated minor child to sue for injuries received in a motor vehicle accident in *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976). Today we declare that automobile guest passenger statutes violate the strong public policy of this State in favor of compensating persons injured by the negligence of others. Accordingly, we will no longer enforce the automobile guest passenger statutes of foreign jurisdictions in our courts.[14]

For the foregoing reasons, the order of the circuit granting summary judgment in favor of the appellees is hereby vacated, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BROTHERTON, Justice dissenting:

I dissent to this case to draw a comparison between it and the recent case of *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986). In the present case, two West Virginia residents were killed in a one-car collision in Indiana. The State of Indiana had a guest passenger statute which would appear to have blocked the suit. Nevertheless, this Court declared the guest passenger statute to be against this State's public policy, and therefore we declined to enforce it.

In *Perkins v. Doe*, the plaintiff was injured in a one-car accident in Virginia. He claimed that his accident was caused because an unknown motorist forced him off the road. However, the applicable West Virginia statute required a touching between the vehicles before there could be a recovery under the uninsured motorist provision while Virginia law did not. To allow the plaintiff to recover, this Court twisted the law so that the plaintiff could bring an action under a West Virginia statute and use the non-touching portions of the Virginia uninsured motorist law.

In the classic pose, Justice is blindfolded so that she can weigh the equities in a case equally without prejudice. We are peeking beneath the blindfold in conflict of law cases to see if an insurance company is involved. If they are, we appear to be manipulating our conflict of law rule so that the insurance company loses. I believe that even insurance companies are entitled to impartiality in the courts.

I therefore respectfully note my dissent.

---

**14.** Although we intend this to be a rule of general application, we do not intend it as an invitation to flagrant forum shopping. For example, were a resident of a guest statute jurisdiction to sue another resident of a guest statute jurisdiction over an accident occurring in a guest statute jurisdiction, the simple fact that the plaintiff was able to serve process on the defendant within our State borders would not compel us to resist application of any relevant guest statute. This State must have some connection with the controversy above and beyond mere service of process before the rule we announce today will be applied. In other words, venue must be proper under some provision *other than W.Va.Code* 56–1–1(a)(4) [1986].