IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-1148

_____

**FILED**

**June 14, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. AMERICAN ELECTRIC POWER CO., INC.;
AMERICAN ELECTRIC POWER SERVICE CORPORATION; OHIO POWER
COMPANY and DOUG WORKMAN,
Defendants Below, Petitioners

v.

THE HONORABLE DEREK C. SWOPE, Lead Presiding Judge,
Gavin Landfill Litigation, Mass Litigation Panel,
The ESTATE of BOBBY CLARY, by JOY CLARY, et al.,
Plaintiffs Below, Respondents

_____

Petition for Writ of Prohibition

WRIT GRANTED

_____

Submitted: March 8, 2017
Filed: June 14, 2017

James W. Turner, Esq.
Ancil G. Ramey, Esq.
Jessica L. Wiley, Esq.
STEPTOE & JOHNSON PLLC
Huntington, West Virginia
Counsel for Petitioners

Christopher J. Regan, Esq.
J. Zachary Zatezalo, Esq.
Laura P. Pollard, Esq.
BORDAS & BORDAS, PLLC
Wheeling, West Virginia
Counsel for Respondents

L. David Duffield, Esq.
Chad S. Lovejoy, Esq.
Duffield, Lovejoy, Stemple & Boggs,
PLLC
Huntington, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE KETCHUM concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.	"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers[.]"  Syllabus point 2, *State ex rel. Peacher v. Sencindiv*er, 160 W.Va. 314, 233 S.E.2d 425 (1977).

2.	"In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression."  Syllabus point 4, in part, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

3.	"In general, this State adheres to the conflicts of law doctrine of *lex loci delicti.*"  Syllabus point 1, *Paul v. Nat'l Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986).

i

4.      "The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of law principles is contrary to the public policy of the forum state."  Syllabus point 3, *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 424 S.E.2d 256 (1992).

WALKER, Justice:

Petitioners American Electric Power Company, Inc., American Electric Power Service Corporation, Ohio Power Company, and Doug Workman ("Petitioners") invoke this Court's original jurisdiction seeking a writ of prohibition to prohibit the Mass Litigation Panel ("MLP") from enforcing its order denying a motion to dismiss twelve plaintiffs who allege that they suffered injury as a result of "take-home" exposure in the Coal Combustion Residuals ("CCR") mass litigation.[1] Petitioners contend that the MLP's determination that Ohio's Mixed Dust Statute[2] is contrary to West Virginia public policy was clearly erroneous and that the application of West Virginia substantive law to the NWDC Plaintiffs' claims violates Petitioners' due process rights. Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we grant the writ of prohibition and remand this matter for further proceedings consistent with this Opinion.

---

[1] The parties to this litigation use different terminology to refer to these twelve plaintiffs, who are family members that shared a residence with spouses, parents, or children who worked on-site at the Gavin Landfill. While Respondents and the MLP refer to the twelve plaintiffs as the "non-working direct claim" plaintiffs, Petitioners refer to these plaintiffs as "off-premises" plaintiffs. For purposes of this Opinion, we collectively refer to these plaintiffs as the "NWDC Plaintiffs."

[2] Ohio Rev. Code §§ 2307.84 through .902 (2017).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case was previously before this Court in *State ex rel. AEP v. Nibert*, 237 W.Va. 14, 784 S.E.2d 713 (2016) ("*AEP I*"). In the prior case, Petitioners filed a writ of prohibition challenging the circuit court's denial of their motion to dismiss on the issue of *forum non conveniens*. We found that the circuit court did not abuse its discretion in refusing Petitioner's motion to dismiss, denied Petitioners' writ of prohibition, and referred the case to the MLP. *Id.* at 17, 784 S.E.2d at 716.

Following this Court's decision in *AEP I*, Respondent Plaintiffs ("Respondents") filed an amended complaint joining the separate claims of seventy-nine individual plaintiffs, who allege that they or their family members were injured by exposure to CCR generated at the General James M. Gavin Power Plant and disposed of at the associated Gavin Landfill, both of which are located in Gallipolis, Ohio (collectively "Gavin Landfill"). Petitioners allege that the Gavin Landfill was owned or operated by American Electric Power Company, Inc. ("AEP"), American Electric Power Service Corporation, and Ohio Power Company during the period relevant to this action.[3]

---

[3] As we indicated in *AEP I*, the Respondents originally filed the underlying action against Petitioners in the Circuit Court of Mason County. *AEP I*, 237 W.Va. at 18, 784 S.E.2d at 717. Respondents allege that they have developed numerous different types of cancer and/or other health problems from their exposure to CCR. Specifically, Respondents claim that such CCR, or fly ash, contains a variety of heavy metals such as beryllium and silica, among others. Of the seventy-nine plaintiffs named in the Amended

(continued . . .)

The twelve NWDC Plaintiffs allege that they suffered injury as a result of take-home exposure to CCR—exposure not by visiting the landfill or the plant, but as a result of sharing a residence with independent contractor plaintiffs who brought CCR home on their clothing and shoes.[4]

On August 15, 2016, Petitioners filed a motion to dismiss the claims of the NWDC Plaintiffs seeking, among other things, dismissal of the claims pursuant to the Ohio Mixed Dust Statute, Ohio Rev. Code §§ 2307.84 through .902, which provides that premises owners are not liable for alleged off-premises mixed dust exposure of the type

Complaint, approximately nine plaintiffs are West Virginia residents; the remaining plaintiffs are primarily residents of Ohio and Kentucky, while a few reside in other states.

Respondents allege that the named corporate entities owned and/or operated the Gavin Landfill during the time period relevant to this action and that their employee and named defendant below, Doug Workman, specifically directed the plaintiffs to work in and around the coal waste and fly ash. Respondents further allege that Mr. Workman failed to address concerns raised by some of the plaintiffs questioning the safety of coal waste exposure, that they were not provided with protective gear to minimize the effects of such exposure, and that AEP and Mr. Workman intentionally concealed the hazardous effects of the coal waste and exposure thereto.

[4] In addition to the twelve NWDC Plaintiffs at issue in this case, thirty-nine plaintiffs allege that they were exposed to CCR while working at the Gavin Landfill for independent contractors, and twenty-seven plaintiffs allege loss of consortium claims derived from the claims of independent contractor plaintiffs. One of the seventy-nine plaintiffs voluntarily dismissed his claim.

3

that the NWDC Plaintiffs allege.[5] On August 29, 2016, Respondents filed a response to Petitioner's Motion to Dismiss asserting various arguments regarding why dismissal was improper.[6]

---

[5] Ohio Rev. Code Ann. §§ 2307.84 through .902 prohibits any claim against a premises owner based on alleged exposure to "mixed dust" unless the exposure occurred on the premises. By its express terms, that bar applies to "any claim for damages . . . in any way related to inhalation of, exposure to, or contact with mixed dust." Ohio Rev. Code Ann. § 2307.83(N).

Petitioners filed a motion to dismiss (1) all of Respondents' claims due to their failure to follow statutory requirements under Ohio's Mixed Dust Statute, (2) all of the NWDC Plaintiffs for failure to follow Ohio statutory requirements for mixed dust exposure against premises owners where the exposure did not occur on the premises, and (3) the "medical monitoring" and "failure to warn, eliminate, protect" claims on the separate grounds that those stand-alone causes of action are not recognized in Ohio. In this proceeding, Petitioners only challenge the MLP's rulings regarding the twelve NWDC Plaintiffs.

[6] Specifically, Respondents alleged that: (1) their claims, which were not "dust" claims, did not fall within the purview of the Ohio Mixed Dust Statute because (a) their claims did not fall within the types of illnesses and exposures addressed by Ohio Revised Code § 2307.84, which specifically addressed nonmalignant conditions and lung cancer, (b) they were not required to comply with the procedural requirements of the Ohio Mixed Dust Statute for filing expert reports and test results regarding Respondents' physical impairments following exposure, (c) the doctrine of laches prohibited Petitioners from asserting, two years into the litigation, that the Ohio Mixed Dust Statute barred Respondents' claims, (d) the Ohio Mixed Dust Statute, which was not retroactive in nature, did not apply to the instant case because it was enacted after the dates of Respondents' exposures, and (e) West Virginia's public policy exception to the rule of *lex loci delicti* applied to prevent Ohio's Mixed Dust Statute from barring Respondents' claims; (2) Ohio law permits recovery for future medical monitoring and treatment; (3) Respondents' claims for "failure to warn, eliminate, protect" are not stand-alone claims, but rather, are included as allegations within their negligence claims; and (4) Respondents sufficiently pled claims for fraud and fraudulent misrepresentation that would survive even if the MLP concluded that the Ohio Mixed Dust Statute barred Respondents' remaining claims.

4

On October 21, 2016, the MLP denied Petitioners' motion to dismiss. The MLP found that because the alleged exposures all occurred entirely within the State of Ohio, the doctrine of *lex loci delicti* required the application of Ohio law to the claims of the NWDC Plaintiffs.[7] The MLP further found that the take-home exposure claims fell within the scope of the Ohio Mixed Dust Statute because they allege off-premises exposure to mixed dust as defined by the statute. With regard to the applicability of the Ohio Mixed Dust Statute, the MLP specifically found:

> Based upon the findings of fact, the Panel concludes that there are sufficient allegations that the Plaintiffs were exposed to "mixed dust" as defined by Ohio Rev. Code Ann. § 2307.84([M]). That statute defines a "mixed dust" as a "mixture of dusts composed of silica and one or more other fibrogenic dusts capable of inducing pulmonary fibrosis if inhaled in sufficient quantity." Ohio Rev. Code Ann. § 2307.84([M]). Plaintiffs' allegations describing coal combustion waste are specific and express allegations that coal combustion waste consists of mixed dust. . . . These allegations are all that is required to allege a "mixed dust" claim under Ohio's mixed dust statute.
>
> Ohio's mixed dust statute further defines a "mixed dust disease claim" as "any claim for damages, losses, indemnification, contribution, or other relief arising out of,

---

[7] "In general, this State adheres to the conflicts of law doctrine of *lex loci delicti*." Syl. pt. 1, *Paul v. Nat'l Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986). Pursuant to this doctrine, "the substantive rights between the parties are determined by the law of the place of injury." *McKinney v. Fairchild Intern., Inc.*, 199 W.Va. 718, 727, 487 S.E.2d 913, 922 (1997) (citing *Blais v. Allied Exterminating Co.*, 198 W.Va. 674, 482 S.E.2d 659 (1996); *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550; *Vest v. St. Albans Psychiatric Hospital, Inc.*, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989)).

5

based on, or in any way related to inhalation of, exposure to, or contact with mixed dust." Ohio Rev. Code Ann. § 2307.84([N]). The definition includes claims for "mental or emotional injury, death, or loss to person, risk of disease or other injury, costs of medical monitoring or surveillance, or any other effects on the person's health that are caused by the person's exposure to mixed dust." *Id.* This is exactly what the paragraphs of the Amended Complaint identified above allege. To come within the statute, no more need be alleged. Accordingly, Plaintiffs have asserted mixed dust disease claims falling within the ambit of Ohio Rev. Code Ann. § 2307.84 *et seq.*

Despite these findings, the MLP found that application of the Ohio Mixed Dust Statute violates the public policy of West Virginia because it bars the claims of the NWDC Plaintiffs, who were not exposed to coal combustion waste while at the Gavin Landfill, but rather, were exposed when the "working direct claim" plaintiffs with whom they resided brought CCR home on their clothes. Relying on our decision in *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 510 S.E.2d 280 (1998), the MLP found that "the doctrine of *lex loci delicti* will not be invoked where 'the application of the substantive law of a foreign state . . . contravenes the public policy of this State.'" *Id.* at 624, 510 S.E.2d at 283. In applying West Virginia's public policy exception to the rule of *lex loci delicti*, the MLP declined to apply Ohio law and concluded it was compelled by West Virginia public policy to allow the NWDC Plaintiffs' claims to go forward even though those claims are prohibited by Ohio law. Citing this Court's decision in *Bower v. Westinghouse*, 206 W.Va. 133, 522 S.E.2d 424 (1999), which permitted medical monitoring claims, the MLP concluded that "the causes of action [Petitioners] seek to

6

dismiss through the application of foreign law exist under West Virginia law on public policy grounds."[8]

On December 12, 2016, Petitioners filed a petition for a writ of prohibition in this Court seeking to prohibit the MLP from enforcing its order denying its motion to dismiss the NWDC Plaintiffs. Respondents filed a response to the petition on January 10, 2017. By order entered January 25, 2017, this Court issued a rule to show cause and set this matter for oral argument.

## II. STANDARD OF REVIEW

Petitioners seek a writ of prohibition. We have held that, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will

---

[8] In addition to the above-stated grounds, the MLP declined to dismiss Respondents' claims for the following additional reasons: (1) it declined to apply the procedural out-of-state expert report requirements set forth in Ohio Revised Code § 2307.87 and concluded that expert discovery was governed by West Virginia Rule of Civil Procedure 26 and the MLP's Rule 16 Case Management Order; (2) it concluded that Ohio law permitted recovery for medical monitoring claims under *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 361 (6th Cir. 2011), and that Respondents had pled sufficient factual allegations to support their claims for recovery of future medical treatment and testing; and (3) it declined to dismiss Respondents' other allegations (a) regarding Petitioners' failure to warn, failure to eliminate, and failure to protect the plaintiffs while working at the Gavin Landfill from exposure to coal combustion waste, finding that they were simply elements or illustrations of negligence, not stand alone counts, and (b) determining that Respondents' claims for fraud and fraudulent concealment had been sufficiently pled and that they would survive even if their remaining claims could be dismissed.

only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers[.]" Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). As we stated in *AEP I*:

> As an extraordinary remedy, this Court reserves the granting of such relief to "really extraordinary causes." *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) (internal quotations and citations omitted).
>
> . . . .
>
> "[T]his Court will use prohibition . . . to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syl. pt. 1, in part, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), superseded by statute on other grounds as stated in *State ex rel. Thornhill Grp., Inc. v. King*, 233 W.Va. 564, 759 S.E.2d 795 (2014).

*AEP I*, 237 W.Va. at 19, 784 S.E.2d at 718.

When deciding whether the writ of prohibition should issue in a given case, we have held as follows:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either

8

procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Keeping these standards in mind, we proceed to consider the parties' arguments.

### III. DISCUSSION

The sole issue this Court must consider is whether the MLP incorrectly applied the public policy exception to our longstanding rule of *lex loci delicti*.[9] Petitioners assert that the MLP's refusal to apply *lex loci delicti* is contrary to the prior decisions of this Court that made clear that the public policy exception is not warranted merely because the law of another state is less favorable to plaintiffs than the law of West Virginia. They contend that the public policy exception is only warranted when the application of a foreign State's law is "offensive to the deeply ingrained or strongly felt policy of the state." *See Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 336, 424

---

[9] Although not raised before the MLP, Petitioners additionally argue that application of West Virginia substantive law to the claims of the NWDC Plaintiffs would violate its due process rights, as well as the full faith and credit clause, where the claims involve Ohio premises, alleged exposure in Ohio, and alleged injury in Ohio. This Court typically does not address arguments that were not raised below. We have, however, held that "[a] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." Syl. pt. 2, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005). Because this case can be resolved on the first issue presented, the applicability of the public policy exception, we need not address the remaining issues presented by Petitioners.

9

S.E.2d 256, 263 (1992) (quoting *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1038 (Miss. 1985)). Even when another State's law offends the public policy of West Virginia, this State still must have sufficient contacts to the conduct underlying the suit before it will use the public policy exception as a means to disregard the other State's law. *See Paul v. Nat'l Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986). Petitioners argue that the MLP committed clear error in not following this Court's holdings in *Nadler* and *Paul.*

Petitioners assert that although the scope of any duty on the part of premises owners to protect off-premises individuals from take-home exposure has been widely discussed and litigated over the past decade in courts and legislatures across the country, neither this Court nor the West Virginia Legislature has addressed whether West Virginia recognizes a take-home duty. Accordingly, Petitioners contend that application of Ohio's Mixed Dust statute does not violate West Virginia public policy. Petitioners also contend that even those states that recognize that a premises owner owes a duty to spouses of its independent contractors limit liability according to whether that State's law would allow the independent contractor to recover. *See Kesner v. Superior Court*, 384 P.3d 283, 302 (Cal. 2016). They argue that under the MLP's order, West Virginia law will govern the claims of the NWDC Plaintiffs even though (1) none of those plaintiffs were citizens or residents of West Virginia at the time of their alleged exposure; (2) all of their alleged exposure occurred in Ohio; (3) AEP's operations at issue were only in Ohio;

10

(4) Ohio law states Petitioners had no duty to such plaintiffs; and (5) Petitioners had no reason to expect that their conduct was not governed by Ohio law.

Respondents counter that the MLP properly applied the public policy exception to the *lex loci delicti* doctrine in support of its decision to deny Petitioners' motion to dismiss the NWDC Plaintiffs. Respondents assert that, contrary to Petitioners' contentions, the MLP's decision does not mandate that Ohio citizens be permitted to recover for take-home exposure. Rather, the MLP declined to dismiss the NWDC Plaintiffs at this stage. Respondents contend that the MLP correctly found that the application of the Ohio Mixed Dust Statute offends the public policy of West Virginia because West Virginia permits recovery for claims of personal injuries arising out of another party's negligence, as well as for claims of intentional acts or omissions such as fraud and misrepresentation, both of which they allege happened in this case. Thus, Respondents argue that this is not a matter of Ohio law being less favorable to the NWDC Plaintiffs, but rather that Ohio law denies the NWDC Plaintiffs any opportunity to recover for injuries sustained as a result of Petitioners' alleged negligence and fraud. They contend that Petitioners should have expected West Virginia law to govern their conduct since it has long been operating coal combustion plants in this state and plants and landfills near the border of West Virginia. According to Respondents, AEP employs West Virginia citizens with significant frequency, and it had every reason to know that harmful material produced at its plants, including the Gavin Plant, and disposed of at the

11

Gavin Landfill, would be taken home by on-site workers, whether in Ohio or West Virginia. For the reasons set forth below, we conclude that the MLP's application of the public policy exception to *lex loci delicti* was erroneous in this case.

In *Paul*, an administrator of an automobile passenger's estate brought a wrongful death action against the driver's estate arising out of a one-car collision that occurred in Indiana. *Paul*, 177 W.Va. at 428, 352 S.E.2d at 550. Both of the women involved in the collision were West Virginia residents. *Id.* We held that Indiana's automobile guest passenger statute that provided the driver immunity from liability violated West Virginia's clearly recognized public policy that "persons injured by the negligence of another should be able to recover in tort." *Id.* at 433-34, 352 S.E.2d at 556. In so holding, we engaged in an extensive analysis of the *lex loci delicti* rule and alternative conflicts of law approaches such as the so-called *Restatement* approach, which analyzes which state has the most significant relationship to the occurrence or the tort.[10] We specifically rejected the *Restatement* approach on the basis that it lacked concrete guidelines and reaffirmed our adherence to the rule of *lex loci delicti*, finding that it provided a more predictable rule. *Id.* at 433, 352 S.E.2d at 556. However, we also acknowledged that "comity does not require the application of the substantive law of a

---

[10] *Id.* (explaining that under § 146 of *Restatement (Second) of Conflicts of Law*, in action for personal injury, local law of state where injury occurred determines rights and liabilities of parties, unless with respect to particular issue, some other state has more significant relationship)

foreign state when that law contravenes the public policy of this State." *Id.* (citing *Dallas v. Whitney*, 118 W.Va. 196, 188 S.E. 766 (1936)).

Noting that West Virginia had never enacted an automobile guest passenger statute, we concluded in *Paul* that it was the "strong public policy of this State that persons injured by the negligence of another should be able to recover in tort" and offered examples of other scenarios where this same public policy of allowing recovery for another's negligence was acknowledged. *Id.* (citing *Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 244 S.E.2d 338 (1978) (abolishing doctrine of inter-spousal immunity to permit recovery in tort); *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (adopting doctrine of comparative negligence over contributory negligence to permit recovery in tort); *Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 143 S.E.2d 154 (1965) (abolishing charitable immunity for hospitals to permit recovery in tort); *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974) (finding no common law governmental immunity for municipal corporations to permit recovery in tort); *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976) (abrogating doctrine of parental immunity to permit unemancipated minor child to recover in tort)).

In applying the public policy exception, we cautioned that:

[a]lthough we intend this to be a rule of general application, we do not intend it as an invitation to flagrant forum shopping. For example, were a resident of a guest statute jurisdiction to sue another resident of a guest statute

13

> jurisdiction over an accident occurring in a guest statute jurisdiction, the simple fact that the plaintiff was able to serve process on the defendant within our State borders would not compel us to resist application of any relevant guest statute. *This State must have some connection with the controversy above and beyond mere service of process before the rule we announce today will be applied.* In other words, venue must be proper under some provision other than W.Va. Code 56-1-1(a)(4) [1986].

*Paul*, 177 W.Va. at 434 n.14, 352 S.E.2d at 557 n.14 (emphasis added).

In *Nadler,* we answered a certified question from the United States Court of Appeals for the Fourth Circuit regarding whether the substantive law of Ohio or the substantive law of West Virginia was to be applied to determine the rights of parties under contract for underinsured motorist coverage. *Nadler*, 188 W.Va. at 331, 424 S.E.2d at 258. This Court held that the provisions of a motor vehicle insurance policy should be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state had a more significant relationship to the transaction and parties. *Id.* at 338, 424 S.E.2d at 265, Syl. pt. 2 (quoting Syl. pt. 2, *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988)). In so holding, we explained that

> [t]he mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of law principles is contrary to the public policy of the forum state.

14

Syl. pt. 3, *Nadler,* 188 W.Va. at 336, 424 S.E.2d at 263. We concluded that where a choice of law question arose with regard to interpretation of coverage provisions in a motor vehicle insurance policy executed in another state, public policy considerations were adequately addressed by application of a significant relationship conflict of laws test enunciated in *Lee*. *See id.* at Syl. pt. 4. Thus, we determined that Ohio law applied to the interpretation of the insurance agreement between parties. *Id.* at 338, 424 S.E.2d at 265. We specifically held that "a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law 'is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people.'" *Id.* (citing 16 Am.Jur.2d *Conflict of Laws* § 18).

Following *Nadler,* we addressed the same type of conflicts of law issue that the MLP was asked to examine here, and we set forth grounds for application of the public policy exception to the doctrine of *lex loci delicti* in *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 510 S.E.2d 280 (1998). The plaintiff in *Mills* brought claims for negligent hiring and wrongful death on behalf of her deceased husband, a truck driver employed by a West Virginia company, who was shot and killed in Maryland by another truck driver who was employed by a Delaware corporation with its principal place of business in Ohio. *Id.* at 622, 510 S.E.2d at 281. The defendant trucking company argued that Maryland law should govern both the issue of negligent hiring and wrongful death. *Id.* The plaintiff argued that, while Maryland law should apply to the

15

negligent hiring issue, West Virginia law should control the claim for wrongful death because Maryland law would have allowed the defenses of contributory negligence and assumption of the risk to operate as complete bars to recovery by a plaintiff, whereas West Virginia law would not. *Id.* Concluding that the contributory negligence doctrine of Maryland contravened the public policy of this State, this Court held that West Virginia law should govern the resolution of the wrongful death claims that were alleged in that case. *Id.* at 624, 510 S.E.2d at 283.

In the case before us, the MLP relied upon *Mills* to find that the public policy exception should apply in this case. In its order, the MLP discussed how applying the Ohio Mixed Dust Statute would deny the NWDC Plaintiffs certain claims to which they are entitled under West Virginia public policy:

> West Virginia has a strong public policy that persons injured by the negligence of another should be able to recover in tort. West Virginia has long "adhere[d] to the rule that the doctrine of *lex loci delicti* will not be invoked where 'the application of the substantive law of a foreign state . . . contravenes the public policy of this State.'" *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 624, 510 S.E.2d 280, 283 (1998) (quoting *Paul*, 177 W.Va. at 433, 352 S.E.2d at 556).
>
> The public policy exception is designed to enforce the public policy of West Virginia in actions filed in the state of West Virginia. *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 624, 510 S.E.2d 280, 283 (1998) (citations omitted).
>
> The Supreme Court of Appeals noted, in this very case, that West Virginia and its citizens have an important

16

interest in the proper resolution of this case, the conduct of the Defendants, and the claims of the Plaintiffs, whether they are West Virginians or citizens of other states. Beyond public policies at stake, the Supreme Court found that West Virginia has a direct interest in this case:

> We conclude the consideration of this State's public interest also weighs in favor of retention of the Plaintiffs' claims in West Virginia . . . to the extent that the corporate defendants operate coal-fired power plants both in Gallia County, Ohio, and Mason County, West Virginia, and the coal waste generated by such power plants has adversely affected the residents of Mason County, West Virginia, these citizens have an interest in deciding the instant controversy.

*State ex rel. Am. Elec. Power Co. v. Nibert,* 237 W.Va. 14, 784 S.E.2d 713, 726 (2016).

> Moreover, the causes of action Defendants would seek to dismiss through the application of foreign law exist under West Virginia law on public policy grounds. For example, in *Bower v. Westinghouse*, the Supreme Court of Appeals explicitly grounded the adoption of a medical monitoring claim on public policy grounds. *See id.*, 206 W.Va. 133, 140, 522 S.E.2d 424, 431 (1999).

The MLP took note of public policies in *Bower* of (1) the public health interest in fostering access to medical testing for individuals exposed to toxic chemicals; (2) the deterrence value of allowing a plaintiff's recovery for medical monitoring costs; (3) the benefit of early detection of cancer; and (4) societal notions of fairness and justice. *Bower*, 206 W.Va. at 140, 522 S.E.2d at 431. The MLP then explained, "[t]he policies described in *Bower*, for the benefit of those who are not yet sick, apply *a fortiori*, to the

17

claims of those who have actually contracted disease and for which West Virginia clearly imposes liability." The MLP accordingly declined to apply the Ohio Mixed Dust Statute because it would bar the NWDC Plaintiffs from any recovery because they were not exposed to CCR while at the Gavin Landfill, but rather by the waste brought home on their family member's clothes. We conclude that the MLP's application of the public policy exception was clearly erroneous in this case.

In *Mills*, a case involving a West Virginia corporation and West Virginia plaintiffs, this Court concluded that the contributory negligence doctrine of Maryland contravened the public policy of this State because we had already affirmatively rejected the contributory negligence doctrine in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). *Mills*, 203 W.Va. at 623 n.3, 510 S.E.2d at 282 n.3. In *Paul*, a case involving two West Virginia residents who were in a collision in Indiana, this Court applied the public policy exception in a circumstance where our Legislature had never statutorily enacted an automobile guest statute although many other states had historically done so. *Id*. at 433, 352 S.E.2d at 556. In both cases, this State had some connection with the controversy above and beyond mere service of process compelling us to resist the application of foreign state law. *Id*. at 434 n.14, 352 S.E.2d at 556 n.14.

While we determined in *AEP I* that the consideration of this State's public interest weighed in favor of retention of the case in West Virginia courts, we did not

18

decide whether West Virginia law would necessarily apply to any of the plaintiffs' claims. Critically, in the set of circumstances before us, none of the twelve NWDC plaintiffs were citizens or residents of West Virginia at the time of their alleged exposures, and none of their exposures occurred in this State. Thus, although West Virginia has a strong public policy that persons injured by the negligence of another should be able to recover in tort, in this particular case, where these twelve plaintiffs lack a sufficient connection with the state of West Virginia, we are not strongly compelled to resist application of Ohio's Mixed Dust Statute. The MLP committed clear error in not following this Court's holding in *Paul*.

The claims of the NWDC Plaintiffs in this case present exactly the type of forum shopping the rule of *lex loci delicti* was intended to prevent. As we cautioned in *Paul*, in order to avoid flagrant forum shopping, "[t]his State must have some connection with the controversy above and beyond mere service of process before the [public policy exception to the doctrine of *lex loci delicti*] will be applied[.]" *Paul*, 177 W.Va. at 434 n.14, 352 S.E.2d at 556 n.14. For these reasons, we conclude that the MLP's application of the public policy exception to the doctrine of *lex loci delicti* was clearly erroneous in this case. Accordingly, under Ohio's Mixed Dust Statute, Petitioners' motion to dismiss should have been granted as to these twelve NWDC Plaintiffs.

## IV. CONCLUSION

19

Accordingly, we grant the requested writ and remand with directions that as to the claims of the NWDC Plaintiffs, Petitioners' motion to dismiss be granted.

Writ Granted.