# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-337

_____

FILED

**June 10, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

BARRY BARR,
Plaintiff Below, Petitioner,

v.

BRENT JACKSON, LYNN PERKINS, HEDGESVILLE REAL ESTATE, LLC,
VIP GENTLEMAN'S CLUB, LLC. d/b/a LUST GENTLEMAN'S CLUB, and
WEST VIRGINIA SPORTS PROMOTIONS, INC.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Berkeley County
Honorable Michael Lorensen, Judge
Civil Action No. CC-02-2022-C-169

REVERSED AND REMANDED

_____

Submitted: May 22, 2024
Filed: June 10, 2024

Stephen G. Skinner, Esq.
Skinner Law Firm
Charles Town, West Virginia
Counsel for Petitioner Barry Barr

Lee Murray Hall, Esq.
Alexis A. Nash, Esq.
Kevin H. Stryker, Esq.
Jenkins Fenstermaker, PLLC
Huntington, West Virginia
Counsel for Respondents Brent Jackson,
Lynn Perkins, and Hedgesville Real
Estate, LLC

Kyle T. McGee, Esq.
Margolis Edelstein
Pittsburgh, Pennsylvania
Counsel for Respondent West Virginia
Sports Promotions, Inc.

Jace Goins, Esq.
Tracey Eberling, Esq.
Steptoe & Johnson PLLC
Martinsburg, West Virginia
Counsel for Respondent VIP
Gentleman's Club, LLC d/b/a Lust
Gentleman's Club

Anthony J. Majestro, Esq.
Powell & Majestro PLLC
Charleston, West Virginia
Counsel for Amicus Curiae, West Virginia Association for Justice


JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

CHIEF JUDGE THOMAS E. SCARR, voluntarily recused.

JUDGE MARYCLAIRE AKERS sitting by temporary assignment

JUDGE CHARLES O. LORENSEN, voluntarily recused.

JUDGE C. RICHARD WILSON sitting by temporary assignment

GREEAR, JUDGE:

Petitioner Barry Barr ("Mr. Barr"), personal representative of the estate of Alexandra "Katie" Barr, appeals the June 29, 2023, order of the Circuit Court of Berkeley County granting Respondents Brent Jackson, Lynn Perkins, Hedgesville Real Estate, LLC ("HRE"), VIP Gentleman's Club, LLC ("VIP") d/b/a Lust Gentleman's Club ("Lust"),[1] and West Virginia Sports Promotions, Inc.'s ("WVSP") (collectively "Respondents") motions to dismiss, with prejudice. On appeal, Mr. Barr argues that the circuit court erred in applying the substantive law of Maryland to his underlying claims under the doctrine of *lex loci delicti*. Instead, Mr. Barr asserts that the substantive law of West Virginia must be applied to his underlying claims, as a public policy exception to *lex loci delicti*.

Based upon our review of the record and the oral and written arguments of counsel, we agree with Mr. Barr and conclude that the circuit court erred in granting Respondents' motions to dismiss.[2] Accordingly, we reverse the June 29, 2023, order

---

[1] Petitioner named "VIP Gentleman's Club, LLC, d/b/a Lust Gentlemen's Club" as a defendant below. However, this defendant's correct name is "VIP Gentleman's Club, LLC, d/b/a Lust Gentleman's Club." https://apps.wv.gov/SOS/BusinessEntitySearch. Accordingly, we sua sponte correct the style of the case and refer to this Respondent by the correct name.

[2] The circuit court's final order addressed three separate motions to dismiss: Respondent VIP Gentleman's Club, LLC's Renewed Motion to Dismiss filed on February 27, 2023; Respondents Jackson, Perkins, and Hedgesville Real Estate, LLC's Renewed Motion to Dismiss filed on March 6, 2023; and Respondent West Virginia Sports Promotions, Inc.'s Motion to Dismiss filed on April 12, 2023.

1

granting dismissal of Mr. Barr's underlying claims and remand this matter for further proceedings consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2022, Michael Maydian,[3] a resident of Alleghany County, Virginia, attended a boxing tournament, produced by WVSP and held at the Berkeley 2000 Recreation Center in Martinsburg, West Virginia, known as the "Toughman Contest." While at the Toughman Contest, Mr. Maydian allegedly purchased and consumed several alcoholic beverages sold by WVSP pursuant to a valid West Virginia Alcohol Beverage Control Administration ("WVABCA") license. After leaving the Toughman Contest, Mr. Maydian drove his vehicle, a Dodge Ram 1500 truck, to Lust, a gentleman's club operated by VIP, also located in Martinsburg.[4] Mr. Barr contends that while a customer at Lust, Mr. Maydian purchased and consumed additional alcoholic beverages, which were sold by Lust pursuant to a valid WVABCA license.

Upon leaving Lust in the early morning of March 6, 2022, an intoxicated Mr. Maydian, in order to reach his Virginia residence, traveled from West Virginia into

---

[3] While he is a named defendant in the underlying action, Mr. Maydian is not a party to this appeal.

[4] Respondents Jackson and Perkins are members of Hedgesville Real Estate, LLC, which owns the premises upon which Lust operates. Further, Respondent Perkins is an organizing member of VIP and Respondent Jackson is a member.

Maryland on Interstate-81 ("I-81"). Shortly thereafter, while traveling on I-81 in Maryland, Mr. Maydian's vehicle struck the rear of a vehicle also traveling on I-81, in which Mr. Barr's decedent, his twenty-year old daughter Katie, was a passenger.[5]

As a result of the injuries she sustained in the March 6, 2022, accident, Mr. Barr's decedent died that same day. At all times relevant hereto, it is alleged that both Mr. Barr and his decedent were residents of the State of West Virginia. On June 9, 2022, Mr. Barr, in his capacity as personal representative of the estate of his decedent, filed the underlying wrongful death action against Mr. Maydian, Brent Jackson, Lynn Perkins, HRE, and VIP/Lust. Mr. Barr subsequently filed an Amended Complaint on February 21, 2023, to include causes of action against WVSP and its security provider Special Services Bureau, Inc. ("SSB").[6]

In his Amended Complaint, Mr. Barr alleges multiple causes of action against Respondents for negligence associated with the sale, service, and dispensing of

---

[5] The record reflects that the March 6, 2022, accident occurred when Mr. Maydian's vehicle struck the rear of the vehicle in which Mr. Barr's decedent was a passenger, causing that vehicle to veer off the interstate and crash into a tree.

Further, the record denotes that more than an hour after the occurrence of the March 6, 2022, accident that Mr. Maydian's breath alcohol concentration ("bac") was 0.17, well over the legal limit for both West Virginia and Maryland drivers. Both Marland and West Virginia have the same legal limit of .08. *See* Md. Code Ann., Transp. § 11-174.1 (West 2005) and West Virginia Code § 17C-5-2(b) (2023).

[6] While it is a named defendant below, SSB is not a party to this appeal.

alcohol to Mr. Maydian in amounts which physically incapacitated and intoxicated him. Mr. Barr contends that a reasonably prudent person knew or should have known that the mere quantity of alcohol served to Mr. Maydian would have caused him to become physically incapacitated and intoxicated. The court below characterized the causes of action alleged by Mr. Barr against the Respondents as "Dram Shop/Negligence."

In response to the Amended Complaint, Respondents filed separate motions to dismiss arguing that under the long recognized doctrine of *lex loci delicti* Mr. Barr's underlying claims are barred as, unlike West Virginia, Maryland law does not recognize "Dram Shop/Negligence" actions. Conversely, Mr. Barr argued that the public policy exception to *lex loci delicti* required the application of West Virginia law as opposed to Maryland law. The circuit court disagreed with Mr. Barr and applied Maryland law. The court found, as noted in paragraphs 8 through 12 of its June 29, 2023, order, that:

> [t]here is no conflict between the substantive law of Maryland and the public policy of West Virginia that warrants application of the public policy exception to *lex loci delicti*. Maryland, like West Virginia, has laws forbidding the service of alcoholic beverages to intoxicated individuals and has heightened criminal penalties associated with the same. Maryland also requires that applicants for an alcohol service license complete approved alcohol awareness training. Maryland's laws regarding the regulation of alcohol are in place to ensure the protection, health, welfare, and safety of the people of the State. Accordingly, Maryland's substantive law regarding the regulation of alcoholic beverages is not in conflict with West Virginia's public policy. Therefore, the doctrine of *lex loci delicti* dictates that the substantive law of Maryland should be applied to [Mr. Barr's] claims against [Respondents] . . .

4

(citations omitted).

In applying the laws of the State of Maryland, the circuit court granted Respondents' motions to dismiss, with prejudice. It is from the June 29, 2023, order that Mr. Barr now appeals.

## II. STANDARD OF REVIEW

The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, *Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995). The SCAWV has further found that at the motion to dismiss stage, complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure, and that

> the circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief."

*Id.* at 776, 461 S.E.2d at 522 (citing Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc*., 160 W.Va. 530, 236 S.E.2d 207 (1977)).

Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based; however, a claim cannot be permitted to

continue if such claim is not authorized by the laws of West Virginia. *Id*. With these standards in mind, we now consider the issue raised on appeal.

## III. DISCUSSION

On appeal, Mr. Barr alleges a single assignment of error, that the circuit court erred in its application of the doctrine of *lex loci delicti* and resultant finding that Maryland's substantive law applies to the underlying case. Instead, Mr. Barr contends the public policy exception to *lex loci delecti* should have been recognized by the circuit court and applied to allow for the application of West Virginia law to the case. We agree. Here, based upon the specific facts and circumstances of this case, we find that the circuit court erred in its failure to apply the public policy exception to *lex loci delicti*.

We note that in its June 29, 2023, order, the court below focused its inquiry into the public policies of West Virginia and Maryland by examining whether each state forbade the service of alcoholic beverages to intoxicated individuals and determined that West Virginia and Maryland laws were in agreement, in that both states have laws "forbidding the service of alcoholic beverages to intoxicated individuals and [have] heightened criminal penalties associated with the same." (*See* June 29, 2023, order at para. 9). While the circuit court did acknowledge that Maryland does not recognize a dram shop liability cause of action, it did not allow this fact any weight in its analysis. Instead of addressing the concurrence of the criminal laws of West Virginia and Maryland regarding

6

the regulation of alcohol, the correct inquiry before the circuit court was whether an individual may maintain a negligence action against an alcohol vendor for alleged violations of their statutory duty not to overserve their patrons and the difference in West Virginia and Maryland laws in that regard. With respect to this area of law, the substantive laws of Maryland and West Virginia are very different.

Traditionally, at common law, it was recognized that the sale of intoxicating beverages to ordinary able-bodied persons did not give rise to any civil liability against the vendor for injuries caused by intoxication, the reason being that the drinking of the intoxicating beverages, and not the selling of it, was viewed as the proximate cause of any subsequent injury. In light of the common law, many jurisdictions enacted statutes, commonly known as "civil damage acts" or "dram shop acts," which imposed on vendors of intoxicants civil liability for injuries sustained by third parties as a consequence of the purchaser's intoxication.

The first "civil damage act" in West Virginia was enacted by the 1872–73 W.Va. Acts chapter 99, section 6. This provision was codified in the 1906 West Virginia Code at chapter 32, section 26 and in the 1931 West Virginia Code § 60–1–22. In 1935, the West Virginia Legislature repealed what we would consider our "dram shop act." *See* 1935 W.Va. Acts chapter 4. However, West Virginia continues to permit such negligence actions to proceed, even in absence of a "dram shop" statute. *See Bailey v. Black*, 183 W. Va. 74, 394 S.E.2d 58 (1990) (There exists civil cause of action against a liquor licensee

7

for the personal injuries caused by licensee's selling alcohol to anyone who is "physically incapacitated" by drinking).

Conversely, Maryland does not impose civil liability on alcohol vendors for the torts of their intoxicated patrons in absence of a special relationship which creates a duty for the vendor to act. *See Warr v. JMGM Group, LLC*, 433 Md. 170, 190, 70 A.3d 347, 359 (2013) ([Maryland] adhere[s] to the principle that "[h]uman beings, drunk or sober, are responsible for their own torts"). Maryland's substantive bar against negligence actions like Mr. Barr's underlying action forms the basis of the issue before us.

To adequately determine which state's substantive law is applicable to the underlying case, we begin with the understanding that *lex loci delicti* has long been the cornerstone of West Virginia's conflict of laws doctrine. Syl. Pt. 1, *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986) ("In general, this State adheres to the conflicts of law doctrine of *lex loci delicti*"). Under this doctrine, in matters involving clear-cut physical injuries, the state in which such injury occurs provides the applicable substantive law. *Vest v. St. Albans Psychiatric Hosp.*, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989) ("[T]he substantive rights between the parties are determined by the law of the place of injury"); *See* Syl. Pt. 1, *Dallas v. Whitney*, 118 W. Va. 106, 188 S.E. 766 (1936) ("Where a cause that is put in motion in one jurisdiction results in injury in another, it is the law of the latter jurisdiction that controls the substantive rights of the parties"); *See also Chase v. Greyhound Lines, Inc.*, 156 W. Va. 444, 448, 195 S.E.2d 810, 813 (1973), *overruled on*

8

*other grounds by Lee v. Comer*, 159 W. Va. 585, 224 S.E.2d 721 (1976) ("Court has held repeatedly that the substantive law of the *lex loci delicti* shall apply in transitory actions unless contrary to the public policy").

The consistency, predictability, and ease of application provided by *lex loci delicti* are not to be discarded lightly. *Paul*, 177 W. Va. at 433, 352 S.E.2d at 555. It is undisputed that the March 6, 2022, motor vehicle accident involving Mr. Barr's decedent occurred on I-81 in Maryland; hence, under a rigid application of *lex loci delicti*, Maryland's substantive law is applicable to and prevents the underlying case from proceeding.

However, understanding that a rigid application of the *lex loci delicti* doctrine may produce unfavorable outcomes or harsh effects under individualized factual scenarios, the SCAWV recognized the public policy exception to this doctrine. *Paul*, 177 W. Va. at 433, 352 S.E.2d at 556. In *Paul*, the SCAWV noted that it has "long recognized that comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State." *Id.* (citing *Dallas v. Whitney*, 118 W. Va. 196, 188 S.E. 766 (1936)). This practice is known as the public policy exception to *lex loci delicti*.

In *Paul*, the SCAWV specifically noted that it is "the strong public policy of this State that persons injured by the negligence of another should be able to recover in

9

tort." *Id.* Based on this strong public policy, in *Paul*, the SCAWV declined to apply an Indiana guest passenger statute that barred recovery of a West Virginia citizen based upon an accident which occurred in Indiana.

Similarly, in *Mills v. Quality Supplier Trucking, Inc.*, 203 W. Va. 621, 510 S.E.2d 280 (1998), the SCAWV determined that a wrongful death action filed in West Virginia against a trucking company principally located in Ohio, based upon a claim that the trucking company negligently hired a driver who shot and killed a driver from West Virginia while in Maryland, was to be governed by the substantive laws of West Virginia. In doing so, the *Mills* Court rejected the application of Maryland's laws. The Court found that "the operative distinction between West Virginia and Maryland law is the application of the comparative negligence doctrine in West Virginia[.]" *Id.* at 623, 510 S.E.2d at 282. Because this rule was contrary to the public policy of West Virginia, the *Mills* Court concluded "we hold that West Virginia law should govern the resolution of the wrongful death issues in the case *sub judice*." *Id.* at 624, 510 S.E.2d at 283.

Even with the issuance of the *Paul* and *Mills* decisions, we are mindful that the SCAWV does not take a request to invoke public policy to avoid application of otherwise valid foreign law lightly. Thus, we adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law "is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people." *Nadler v. Liberty*

10

*Mut. Fire Ins. Co.*, 188 W. Va. 329, 338, 424 S.E.2d 256, 265 (1992). In other words, the public policy exception is necessarily a narrow one, to be invoked only in extraordinary circumstances. *See Yost v. Travelers Ins. Co.*, 181 F.3d 95 (4th Cir. 1999). The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state. Syl. Pt. 3, *Nadler*, 188 W. Va. at 331, 424 S.E.2d at 258.

For example, in *Oakes v. Oxygen Therapy Services*, 178 W. Va. 543, 363 S.E.2d 130 (1987), a petitioner-employee claimed that the respondent-employer terminated his employment in retaliation for claiming workers' compensation benefits. When analyzing the conflicts law involved, the *Oakes* Court noted that West Virginia law recognized a civil claim, but Maryland did not. The *Oakes* Court then applied the "significant relationship test"[7] and affirmed the circuit court's application of Maryland law to the retaliatory discharge claim because the petitioner had been employed at the Maryland office, his employment contract stipulated that the employment relationship would be governed by Maryland law, and he had received benefits in Maryland. *Oakes* explicitly distinguished the complex circumstances of that case from the "clear-cut cases of physical injury" to which the *lex loci delicti* rule has generally been applied. 178 W. Va. at 544, 363 S.E.2d at 131.

---

[7] *See* Syl. Pt. 2, *Lee v. Saliga*, 179 W. Va. 762, 373 S.E.2d 345 (1988).

11

In its appellate brief, Respondent VIP argues that this court "has seemingly been invited" by Mr. Barr and Amicus counsel to abandon the application of *lex loci delicti* in favor of an approach "that would always favor West Virginia residents, despite the fact" that the SCAWV has "steadfastly rejected those forays in favor of following the principle of *lex loci delicti*." We disagree with Respondent and note that the SCAWV has refused to apply West Virginia's strong public policy favoring recovery only when West Virginia has insufficient contacts to the alleged incident to justify a deviation from *lex loci delicti*. In *State ex rel. Am. Elec. Power Co. v. Swope,* 239 W. Va. 470, 801 S.E.2d 485 (2017), the SCAWV applied Ohio's Mixed Dust Statute[8] which was a bar to plaintiffs' claim for cancer and/or other health problems for exposure to fly ash because none of the plaintiffs were citizens or residents of West Virginia, stating

> although West Virginia has a strong public policy that persons injured by the negligence of another should be able to recover in tort, in this particular case, where these twelve plaintiffs lack a sufficient connection with the state of West Virginia, we are not strongly compelled to resist application of Ohio's Mixed Dust Statute.

*Id.* 239 W. Va. at 479, 801 S.E.2d at 494.

Likewise, in *Nadler,* the SCAWV refused to invoke the public policy exception and applied Ohio law interpreting underinsured motorist coverage even though West Virginia law was more favorable to the plaintiffs. The *Nadler* Court's decision was based upon the facts that the insurance contract at issue was executed in Ohio, the plaintiffs

---

[8] Ohio Rev. Code §§ 2307.84 through .902.

12

were residents of Ohio, and the covered vehicles were principally garaged in Ohio. *See Nadler* 188 W. Va. at 338, 424 S.E.2d at 265.

However, unlike *Nadler* and *Mills*, in the instant case, West Virginia has significant connections to the parties and the alleged negligent actions or inactions of Respondents. Here, both Mr. Barr and his decedent, as well as all of the Respondents herein, are West Virginia citizens or corporations who have an expectation to be bound by West Virginia jurisprudence. Further, all of the actions Mr. Barr alleges against Respondents herein were acts that allegedly occurred in West Virginia. Thus, based upon our interpretation of the public policy exception to *lex loci delicti* and the specific facts and circumstances of the underlying case, we find there are sufficient connections to West Virginia to require application of the public policy exception, and we find that West Virginia substantive law on the issue of "Dram Shop/Negligence" applies.

In their briefs, Respondents generally question whether dram shop liability is the public policy of West Virginia. However, we find that such a determination does not need to be made by this Court. This opinion should not be interpreted to conclude that dram shop liability is the public policy of West Virginia. This Court has made no such finding. Rather, this opinion should simply be read and interpreted as a recognition, under the judicial policy of stare decisis, of the SCAWV's determination that it is the "strong public policy of this [s]tate that persons injured by the negligence of another should be able to recover in tort[,]" which must be tempered by the application of the significant relationship

13

conflict of laws test. *See Lee*, 179 W. Va. at 762, 373 S.E.2d at 345. *See also In re N.C.*, 2023 WL 6238421 (W. Va. 2023) ("Stare decisis . . . is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation.") Moreover, even if this Court disagreed with the SCAWV's identification of the strong public policy of the State of West Virginia in *Paul*, a "mere disagreement as to how a case was decided is not a sufficient reason to deviate from a judicial policy promoting certainty, stability and uniformity in the law." *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 1029, 207 S.E.2d 169, 173 (1974). In fact, this Court is constrained to apply the law as explained by the SCAWV. This Court, as a midlevel court of appeal, does not have the authority to review or overturn decisions of the SCAWV. Rulings from the SCAWV are binding precedent for this Court. Accordingly, we simply cannot ignore the SCAWV's recognition of the public policy exception to *lex loci delicti* for cases, like the instant case, where there is a significant relationship to West Virginia.

We further note that the only connection between Maryland and the underlying case is simply the fact that the accident occurred in Maryland. While Respondents find that fact dispositive, we do not. In *Howe v. Howe*, 218 W.Va. 638, 646, 625 S.E.2d 716, 724 (2005), the SCAWV applied Ohio law in both the *Lee* and *Nadler* cases, noting that West Virginia's only relationship to the parties or transactions at issue in those cases was the "mere fortuity" that the accident at issue occurred in West Virginia. Certainly, the inverse is also true. Simply because the accident at issue in the underlying case did not occur in West Virginia is not dispositive of the question of conflict of law.

14

Further, Respondents suggest that the public policy articulated in *Paul* should be limited to occasions in which the plaintiff has no other source of recovery. However, we can identify no cases which have limited *Paul* in such a manner. Without such authority, we decline to create such a limitation on the application of the public policy exception to the *lex loci delicti* doctrine.

## IV.    CONCLUSION

For the foregoing reasons, the June 29, 2023, order of the Circuit Court of Berkeley County is hereby reversed, and this matter is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.